```
                    UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        ) 16-CR-00508-1
                                )
        vs.                     )
                                )
JASON T. MALEK,                 ) Philadelphia, PA
                                ) January 9, 2017
            Defendant.          ) 3:12 p.m.


                    TRANSCRIPT OF PLEA HEARING
            BEFORE THE HONORABLE R. BARCLAY SURRICK
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:         SONIA MITTAL, ESQUIRE
                            U.S. DEPARTMENT OF JUSTICE
                            ANTITRUST DIVISION
                            450 Fifth St., NW
                            Suite 11300
                            Washington, D.C. 20530


For the Defendant           MICHAEL B. HIMMEL, ESQUIRE
                            LOWENSTEIN SANDLER, LLP
                            65 Livingston Avenue
                            Roseland, NJ 07068


Audio Operator:             CHRISTOPHER KUREK


Transcribed by:             DIANA DOMAN TRANSCRIBING, LLC
                            P.O. Box 129
                            Gibbsboro, New Jersey  08026-0129
                            Office:  (856) 435-7172
                            Fax:     (856) 435-7124
                            Email:   dianadoman@comcast.net
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1                          I N D E X

2    FACTUAL BASIS:

3         Ms. Mittal                                    18

4    PLEA:                                              23

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (The following was heard in open court at 3:12 p.m.)

2               THE CLERK:  All rise.  United States District Court

3  for the Eastern District of Pennsylvania is now in session,

4  the Honorable R. Barclay Surrick presiding.

5               THE COURT:  Good afternoon.

6               ALL COUNSEL:  Good afternoon, Your Honor.

7               THE COURT:  Have a seat.  Okay.  We're calling the

8  case of United States v. Jason Malek.  Case Number 16-508.

9  Counsel, please identify yourselves for the record.

10              MS. MITTAL:  Good afternoon, Your Honor.  My name is

11  Sonia Mittal, I represent the United States.  Along with me at

12  counsel table are Mark Grundvig and Ellen Clarke, also

13  representing the United States.

14              MR. HIMMEL:  Good afternoon, Your Honor.  Michael

15  Himmel for Jason Malek.

16              THE COURT:  Okay.  Counsel, we're here this

17  afternoon, as I understand it, for a plea of guilty to a

18  two-count Information.  Mr. Malek is going to enter a plea of

19  guilty to Counts One and Two of Information under 16-0508.

20  Are we ready to proceed?

21              MR. HIMMEL:  Yes, Your Honor.

22              THE COURT:  Mr. Himmel, why don't you bring your

23  client forward?

24              All right.  Would you swear the defendant?

25              THE CLERK:  Raise your right hand, please.

4

1          JASON MALEK, DEFENDANT, SWORN

2                    THE CLERK:  Can you state your full name, please?

3                    MR. MALEK:  Jason Temir Malek (phonetic).

4                    THE CLERK:  Thank you.

5                    THE COURT:  All right.  Mr. Malek, I'm going to ask

6     you a number of questions over the next half hour or so.  And

7     I'm asking you these questions so that I can determine that

8     you are entering this plea voluntarily and intelligently.

9                    Do you understand that?

10                   MR. MALEK:  Yes, sir.

11                   THE COURT:  You were just placed under oath by my

12    Clerk.  When you're under oath, you have to answer my

13    questions truthfully.  Do you understand?

14                   MR. MALEK:  Yes, sir.

15                   THE COURT:  If you fail to answer questions

16    truthfully when you're under oath, you can be prosecuted for

17    perjury.  Do you understand that?

18                   MR. MALEK:  Yes, sir.

19                   THE COURT:  All right.  Mr. Malek, how old are you?

20                   MR. MALEK:  Forty.

21                   THE COURT:  And far did you go in school?

22                   MR. MALEK:  Eleventh grade.

23                   THE COURT:  Do you read and write?

24                   MR. MALEK:  Yes.

25                   THE COURT:  Are you under the influence of any

1    alcohol today?

2              MR. MALEK:  No.

3              THE COURT:  Under the influence of any drugs?

4              MR. MALEK:  No.

5              THE COURT:  Are you under the care of a psychologist

6    or a psychiatrist?

7              MR. MALEK:  No.

8              THE COURT:  Is there any reason at all, Mr. Malek,

9    why you might have difficulty understanding these proceedings?

10             MR. MALEK:  No.

11             THE COURT:  You are represented by Mr Himmel in this

12   matter?

13             MR. MALEK:  Yes, sir.

14             THE COURT:  You've had a chance to discuss this

15   matter with him in detail?

16             MR. MALEK:  Yes, sir.

17             THE COURT:  Are you satisfied with his

18   representation?

19             MR. MALEK:  Yes.

20             THE COURT:  Are you satisfied that if you chose to

21   go to trial in this case, he could properly represent you?

22             MR. MALEK:  Yes.

23             THE COURT:  Mr. Himmel, you've had a chance to

24   discuss this matter with your client in detail?

25             MR. HIMMEL:  Yes, I did.

6

1              THE COURT:  Are you satisfied that he's entering a

2      voluntary, intelligent plea?

3              MR. HIMMEL:  Yes, sir.

4              THE COURT:  Mr. Malek, as I understand it, you want

5      to plead guilty to Counts One and Two of an Information.  You

6      understand you have a right to have this matter presented to a

7      grand jury?

8              MR. MALEK:  Yes, sir.

9              THE COURT:  If you ask to have this matter presented

10      to the grand jury, the grand jury would be made up of anywhere

11      from 16 to 23 citizens from the Eastern District of

12      Pennsylvania.  And at least 16 of those grand jurors would

13      have to be satisfied that there was probable cause to believe

14      that you committed the crimes in this Information.

15              Do you understand that?

16              MR. MALEK:  Yes, sir.

17              THE COURT:  But you don't want the matter presented

18      to the grand jury, you want to admit your guilt to this

19      Information, is that correct?

20              MR. MALEK:  Yes, sir.

21              THE COURT:  Now you did, I believe, sign a waiver

22      form, did you not?

23              MR. MALEK:  Yes.

24              THE COURT:  A waiver of presentment to a grand jury?

25              MR. MALEK:  Yes, sir.

1        THE COURT:  I'm holding that in my hand at this

2    point, and in looking at that, where your name's typed in, it

3    would appear that you signed that.  Is that your signature?

4        MR. MALEK:  Yes, sir.

5        THE COURT:  And you discussed this with Mr. Himmel

6    before you signed it?

7        MR. MALEK:  Yes, sir.

8        THE COURT:  Did you sign it of your own free will?

9        MR. MALEK:  Yes, sir.

10       THE COURT:  All right.  The waiver form will be made

11   a part of the record.  Mr. Glazer (sic), the Information that

12   you want to plead guilty to, as I indicated, has two counts.

13   They charge you with violating Section 1 of the Sherman Act.

14       Do you understand that?

15       MR. MALEK:  Yes, sir.

16       THE COURT:  Section One of the Sherman Act provides,

17   among other things, that every contact, or combination, or

18   conspiracy, in restraint of trade is illegal.  Do you

19   understand that?

20       MR. MALEK:  Yes, sir.

21       THE COURT:  So in this case, Mr. Malek, if the

22   Government had to prove that you violated Section One of the

23   Sherman Act they would have to prove the following.  That you

24   knowingly and intentionally entered into an agreement with

25   other individuals or entities to do an unlawful act.

1    And in this case that unlawful act was to

2  unreasonably restrain trade or commerce by allocating

3  customers, rigging bids, and fixing prices.

4    And they would also have to prove that this

5  conspiracy substantially affected interstate or foreign

6  commerce.  Do you understand that?

7    MR. MALEK:  Yes, sir.

8    THE COURT:  Now Count One charges you with that

9  unlawful act as it relates to a conspiracy that existed

10  between April 2013 and December 2015 involving the generic

11  drug Doxycycline Hyclate, do you understand that?

12    MR. MALEK:  Yes, sir.

13    THE COURT:  And Count Two deals with a conspiracy to

14  restrain trade that existed between April of 2014 and December

15  of 2015 involving the drug Glyburide.

16    MR. MALEK:  Yes, sir.

17    THE COURT:  Do you have any questions about the

18  crimes that you are admitting here this afternoon?

19    MR. MALEK:  No, Your Honor.

20    THE COURT:  Do you understand that violating the

21  Sherman Act, Section One, can be punished by imprisonment of

22  up to ten years?

23    MR. MALEK:  Yes, Your Honor.

24    THE COURT:  Do you understand that there is a

25  supervised release that follows imprisonment of up to three

1    years?

2              MR. MALEK:  Yes, Your Honor.

3              THE COURT:  Do you understand that if you're on

4    supervised release, and you violate the terms of supervised

5    release, you can be brought back into Court and you can be

6    re-incarcerated for up to two years?

7              MR. MALEK:  Yes, Your Honor.

8              THE COURT:  There's also a fine that can be imposed

9    for this violation.  And that fine is equal to the greater of

10   $1 million, or twice the gross pecuniary gain that the

11   conspirators derived from the crime.  Or twice the gross

12   pecuniary loss caused to the victims of the crime by the

13   conspirators.  Do you understand that?

14             MR. MALEK:  Yes, Your Honor.

15             THE COURT:  Do you have any questions at all about

16   the crime that you are admitting here this afternoon?

17             MR. MALEK:  No, Your Honor.

18             THE COURT:  Any questions about the punishment that

19   can be imposed for that crime?

20             MR. MALEK:  No, sir.

21             THE COURT:  Now, Mr. Glazer (sic), you understand --

22   or, Mr. Malek, you understand that you do not have to enter a

23   plea of guilty.  You have an absolute constitutional right to

24   go to trial in this case.  Do you understand that?

25             MR. MALEK:  Yes, Your Honor.

1            THE COURT:  If you chose to go to trial in this

2    matter, we would schedule the case for trial on a date

3    certain, we would bring prospective jurors into this

4    courtroom.  Those jurors would all be citizens from the

5    Eastern District of Pennsylvania.  And you could participate

6    in the selection of the jury that would hear the case.  Do you

7    understand that?

8            MR. MALEK:  Yes, Your Honor.

9            THE COURT:  During that selection process, you would

10   be able to challenge jurors peremptorily.  You would get a

11   certain number of peremptory challenges that you would not

12   have to explain to anyone.  Do you understand that?

13           MR. MALEK:  Yes, sir.

14           THE COURT:  You would also get challenges for cause.

15   Any prospective juror who could not fairly try this case, you

16   could challenge and we would strike that juror.  Do you

17   understand that?

18           MR. MALEK:  Yes, Your Honor.

19           THE COURT:  And do you understand that after you

20   made your strikes, and after the Government did the same, 12

21   jurors would be empaneled to hear the case.  Do you understand

22   that?

23           MR. MALEK:  Yes, sir.

24           THE COURT:  Do you understand that I would tell

25   those 12 jurors, I would instruct them that you are presumed

1   innocent, that the burden is upon the Government to prove you

2   guilty by evidence beyond a reasonable doubt, and I would tell

3   them the mere fact that you've been arrested and accused of a

4   crime is not evidence against you.  Do you understand that?

5            MR. MALEK:  Yes, Your Honor.

6            THE COURT:  Do you understand that if after hearing

7   all of the evidence and testimony, any one of those 12 jurors

8   had a reasonable doubt as to your guilt, you could not be

9   found guilty, because the verdict of a criminal jury must be

10  unanimous, all must agree.

11           Do you understand that?

12           MR. MALEK:  Yes, Your Honor.

13           THE COURT:  You understand, Mr. Malek, that if you

14  chose to go to trial, you would have a right to file pretrial

15  motions.  Motions to suppress evidence, and other pretrial

16  motions.  Do you understand that?

17           MR. MALEK:  Yes, sir.

18           THE COURT:  Did you speak with Mr. Himmel about

19  filing those pretrial motions?

20           MR. MALEK:  Yes, sir.

21           THE COURT:  Do you understand that if you filed

22  motions, I would have hearings on them, and then I would rule

23  on them?

24           MR. MALEK:  Yes, sir.

25           THE COURT:  Do you understand that if you chose to

1  go to trial in this matter, you would have a right to confront

2  and to cross-examine all the witnesses against you?

3              MR. MALEK:  Yes, Your Honor.

4              THE COURT:  You have a right to present your own

5  witnesses.  And if you subpoenaed witnesses, we would require

6  that they appear.  Do you understand that?

7              MR. MALEK:  Yes, sir.

8              THE COURT:  You understand that you do not have to

9  testify at a trial?  You have a constitutional right to remain

10 silent.  And if you choose to exercise that right, it cannot

11 be held against you in any way.  Do you understand that?

12             MR. MALEK:  Yes, sir.

13             THE COURT:  Do you understand that if you went to

14 trial and you were convicted, if you were found guilty, you'd

15 have a right to appeal.  And we'd give you an attorney free of

16 charge and file that appeal if you couldn't afford one.

17             Do you understand that?

18             MR. MALEK:  Yes, sir.

19             THE COURT:  In that appeal, you could raise

20 objections to anything that happened during the trial that you

21 felt was improper.  Do you understand that?

22             MR. MALEK:  Yes, Your Honor.

23             THE COURT:  You could also raise objections to my

24 rulings on those pretrial motions that I mentioned a few

25 minutes ago.  Do you understand that?

1          MR. MALEK:  Yes, sir.

2          THE COURT:  Mr. Malek, you're telling me you don't

3     want to go through that process?

4          MR. MALEK:  Yes, Your Honor.

5          THE COURT:  You want to admit your guilt here this

6     afternoon and take the consequences?

7          MR. MALEK:  Yes, Your Honor.

8          THE COURT:  You understand that if -- if I accept

9     this plea, I am simply going to order a presentence

10    investigation report, and schedule the matter for sentencing.

11    Do you understand that?

12         MR. MALEK:  Yes, Your Honor.

13         THE COURT:  You and Mr. Himmel will get a copy of

14    that presentence report, and you can make objections to it at

15    the time of sentencing.  Do you understand that?

16         MR. MALEK:  Yes, Your Honor.

17         THE COURT:  Do you understand that there are

18    sentencing guidelines in the Federal system?  Those guidelines

19    are advisory, they're not mandatory, but I have to consider

20    them when I'm imposing sentence.  Do you understand that?

21         MR. MALEK:  Yes, Your Honor.

22         THE COURT:  You've talked to Mr. Himmel about the

23    sentencing guidelines?

24         MR. MALEK:  Yes, sir.

25         THE COURT:  Now, Mr. Malek, you entered into a plea

Colloquy                                        14

1   agreement with the Government, is that correct?

2          MR. MALEK:  Yes, Your Honor.

3          THE COURT:  I'm holding that plea agreement in my

4   hand.  And it would appear that it is a 17-page document, and

5   on page 17, it would appear that you signed that document

6   where your name is typed in.  Is that your signature?

7          MR. MALEK:  Yes, Your Honor.

8          THE COURT:  Mr. Malek, did you read this document

9   before you signed it?

10         MR. MALEK:  Yes, Your Honor.

11         THE COURT:  Did you go over it with Mr. Himmel

12  before you signed it?

13         MR. MALEK:  Yes, sir.

14         THE COURT:  Did you understand each and every

15  paragraph of it before you signed it?

16         MR. MALEK:  Yes, sir.

17         THE COURT:  Did you sign it of your own free will?

18         MR. MALEK:  Yes, sir.

19         THE COURT:  Anybody put any pressure on you to make

20  you sign this?

21         MR. MALEK:  No, Your Honor.

22         THE COURT:  Did anybody promise you anything in

23  return for signing it?

24         MR. MALEK:  No, Your Honor.

25         THE COURT:  There are a couple of provisions in here

Colloquy                                                          15

1  that I want to talk to you about.  First of all, there is a

2  waiver of appeal rights.  Do you remember reading that?

3          MR. MALEK:  Yes, sir.

4          THE COURT:  Do you understand that by entering this

5  plea you're severely limiting your appeal rights?

6          MR. MALEK:  Yes, sir.

7          THE COURT:  You understand that under this plea

8  agreement the only issues that you could raise on appeal would

9  be if I sentenced you above the statutory maximum, do you

10 understand that?

11         MR. MALEK:  Yes, Your Honor.

12         THE COURT:  If I were to impose a sentence departing

13 above the sentencing guidelines that was unreasonable, you

14 could object to that, and raise that as an objection.  Do you

15 understand that?

16         MR. MALEK:  Yes, sir.

17         THE COURT:  You could also raise an objection that

18 your counsel has ineffectively represented you.  Do you

19 understand that?

20         MR. MALEK:  Yes, Your Honor.

21         THE COURT:  You're telling me, however, that Mr.

22 Himmel has given you good representation?

23         MR. MALEK:  Yes, Your Honor.

24         THE COURT:  He's been an effective attorney in

25 representing your interest?

Colloquy                                                    16

1              MR. MALEK:  Yes, sir.

2              THE COURT:  Do you have any questions about that?

3              MR. MALEK:  No, Your Honor.

4              THE COURT:  There is another provision in this plea

5    agreement that deals with a downward departure under

6    Sentencing Guideline, Section 5K1.1.  Do you recall reading

7    that?

8              MR. MALEK:  Yes, sir.

9              THE COURT:  That provision essentially says that, in

10   return for your cooperation, the Government can come in here

11   at the time of sentencing and request that I depart downward

12   from those sentencing guidelines that I mentioned earlier.  Do

13   you understand that?

14             MR. MALEK:  Yes, Your Honor.

15             THE COURT:  Do you understand that it is solely

16   within the discretion of the Government whether they will come

17   in here and make such a request?

18             MR. MALEK:  Yes, Your Honor.

19             THE COURT:  Do you understand that it is within my

20   discretion whether I will grant that request, and the extent

21   to which I would grant that request?

22             MR. MALEK:  Yes, Your Honor.

23             THE COURT:  There are also in this plea agreement

24   recommendations with regard to the sentencing guidelines.  You

25   understand, Mr. Malek, that those are simply recommendations.

1    I'm not bound by the recommendations that you and the

2    Government make as it relates to the sentencing guidelines, do

3    you understand that?

4              MR. MALEK:  Yes, Your Honor.

5              THE COURT:  It's up to me at the time of sentencing

6    to determine what the guideline implications are, and to

7    impose a sentence that is reasonable under the circumstances.

8    Do you understand that?

9              MR. MALEK:  Yes, sir.

10             THE COURT:  Mr. Malek, knowing all of this, do you

11   still want to plead guilty here this afternoon?

12             MR. MALEK:  Yes, Your Honor.

13             THE COURT:  Are you entering this plea of your own

14   free will?

15             MR. MALEK:  Yes, sir.

16             THE COURT:  Any pressure been put on you at all?

17             MR. MALEK:  No, Your Honor.

18             THE COURT:  Any promises been made at all?

19             MR. MALEK:  None at all, sir.

20             THE COURT:  You know what you're doing?

21             MR. MALEK:  Yes, Your Honor

22             THE COURT:  Any questions about what you're doing?

23             MR. MALEK:  No, sir.

24             THE COURT:  You understand that if you have any

25   questions, now is the time to ask them, not later?

Factual Basis                                        18

1          MR. MALEK:  Yes, sir.

2          THE COURT:  Mr. Himmel, again, you're satisfied that

3    your client is entering a voluntary, intelligent plea here?

4          MR. HIMMEL:  Yes, sir.

5          THE COURT:  Any question in your mind about that?

6          MR. MALEK:  No, sir.

7          THE COURT:  Counsel, can we have the factual basis

8    for this plea?

9          MS. MITTAL:  Your Honor, had this case gone to

10   trial, the United States would have presented evidence

11   sufficient to prove the following facts.

12         During the periods relevant to Count One and Count

13   Two, the defendant was senior vice-president commercial

14   operations, and president of a pharmaceutical company,

15   organized and existing under the laws of Delaware, with its

16   principal place of business in Eatontown, New Jersey.

17         During the relevant period, the defendant's company

18   was engaged in the acquisition, licensing, production,

19   marketing, sales and distribution of generic pharmaceutical

20   products, including Doxycycline Hyclate, and Glyburide, and

21   was engaged in the sale of those drugs in the United States.

22         Doxycycline Hyclate is a generic antibiotic used to

23   treat a variety of bacterial infections.  Glyburide is a

24   generic drug used in the treatment of diabetes.  During the

25   relevant periods, the defendant's company produced and

1   distributed Doxycycline Hyclate in delayed release tablet form

2   in three dosage strengths.  And produced and distributed

3   Glyburide table form in four strengths.  During the relevant

4   period, the parties agree that the affected volume of

5   commerce, based on sales of Doxycycline Hyclate and Glyburide

6   in the United States, totaled approximately $1.6 million,

7   after excluding certain sales pursuant to United States

8   Sentencing Guideline Section 1B1.8.

9         The relevant period for Count One is that period

10  from in or about April 2013, and continuing until at least

11  December 2015.  During the relevant period, the defendant

12  participated in the conspiracy with other persons and entities

13  engaged in the production and sale of generic pharmaceutical

14  products, including Doxycycline Hyclate.

15        The primary purpose of which was to allocate

16  customers, rig bids, and fix and maintain prices for

17  Doxycycline Hyclate sold in the United States.  In furtherance

18  of the conspiracy, the defendant and his co-conspirators,

19  including individuals the defendant supervised at his company,

20  and those he reported to at his company's parent, engaged in

21  discussions and attended meetings with co-conspirators

22  involved in the production and sale of Doxycycline Hyclate.

23        During such discussions and meetings, agreements

24  were reached to allocate customers, rig bids, and fix and

25  maintain the prices of Doxycycline Hyclate sold in the United

Factual Basis                                    20

1   States.

2          The relevant period for Count Two is that period

3   from in or about April 2014, and continuing until at least

4   December 2015.  During the relevant period, the defendant

5   participated in a conspiracy with other persons and entities

6   engaged in the production and sale of generic pharmaceutical

7   products, including Glyburide, the primary purpose of which

8   was to allocate customers and to fix and maintain prices of

9   Glyburide sold in the United States.

10         In furtherance of the conspiracy, the defendant and

11  his co-conspirators at his company, including individuals that

12  the defendant supervised, engaged in discussions and attended

13  meetings with co-conspirators involved in the production and

14  sale of Glyburide.

15         During such discussions and meetings, agreements

16  were reached to allocate customers and to fix and maintain

17  prices of Glyburide sold in the United States.  The defendant

18  was a manager or supervisor in the conspiracy which involved

19  at least five participants.

20         During the periods relevant for Counts One and Two,

21  Doxycycline Hyclate and Glyburide sold by one or more of the

22  conspirator firms, and equipment and supplies necessary for

23  the production and sale of those drugs, as well as payments

24  for those drugs, traveled in interstate and foreign commerce.

25         The business activities of the defendant and his

1    company, and the co-conspirators in connection with the

2    production and sale of Doxycycline Hyclate and Glyburide that

3    were the subject of this conspiracy, were within the flow of,

4    and substantially affected interstate and foreign commerce.

5              Acts in furtherance of the conspiracy described in

6    Count One and in Count Two were carried out within the Eastern

7    District of Pennsylvania.  Doxycycline Hyclate, the subject of

8    the conspiracy described in Count One, and Glyburide, the

9    subject of the conspiracy described in Count Two, were sold by

10   one or more conspirators to customers in this District.

11             In addition, the conspiratorial meetings and

12   discussions described took place within the United States and

13   elsewhere.  And at least one of these discussions relevant to

14   Count Two involved a co-conspirator that has its principal

15   place of business in this District.

16             THE COURT:  Mr. Malek, you heard what the Assistant

17   United States Attorney just said with regard to the facts of

18   this case?

19             MR. MALEK:  Yes, sir.

20             THE COURT:  And you read those facts in the plea

21   memorandum?

22             MR. MALEK:  Yes, Your Honor.

23             THE COURT:  Do you understand that you are admitting

24   those facts?

25             MR. MALEK:  Yes, Your Honor.

Colloquy                                    22

1          THE COURT:  Do you admit those facts?

2          MR. MALEK:  Yes, Your Honor.

3          THE COURT:  Do you understand that if you did the

4    things that you just admitted, you are in fact guilty of these

5    crimes?

6          MR. MALEK:  Yes, Your Honor

7          THE COURT:  Mr. Malek, when I accept this plea I'm

8    simply going to order a presentence investigation report and

9    schedule the matter down for sentencing.  When I bring you

10   back here for sentencing, if I impose a period of

11   incarceration, it will be a flat period of incarceration.

12   There is no parole in the Federal system.

13          Do you understand that?

14          MR. MALEK:  Yes, Your Honor

15          THE COURT:  And finally, you and Mr. Himmel will get

16   a opportunity to review that presentence report before the

17   sentencing hearing, and you can make objections to it at the

18   time of sentencing.  Do you understand that?

19          MR. MALEK:  Yes, Your Honor.

20          THE COURT:  Counsel, do you have anything further?

21          MR. HIMMEL:  No, sir.

22          THE COURT:  Counsel, do you have anything further?

23          MS. MITTAL:  No, Your Honor.

24          THE COURT:  All right.  I find this plea is

25   voluntarily and intelligently entered.  I find that there is a

1    factual basis for it.  And I will accept it.  Will my Clerk

2    please take the plea?

3           THE CLERK:  Jason Malek, you are charged in

4    Information Number 16-508 consisting of Counts One and Two,

5    charging you with antitrust violations in violation of Title

6    15 of the United States Code, Section One.  How do you plead,

7    guilty or not guilty?

8           MR. MALEK:  Guilty.

9           THE CLERK:  Thank you.

10          THE COURT:  All right.  I'm going to order that

11   presentence report that I mentioned.  I'm going to schedule

12   this matter for sentencing for April 10, 2017 at 2 p.m.  And

13   finally, with regard to Mr. Malek's status, I'm going to

14   permit Mr. Malek to be released on $300,000 ROR bail.

15          The conditions of that bail will be that Mr. Malek

16   shall report to the Pretrial Services as directed.  That he

17   will surrender his passport.  That he will not possess any

18   firearms.  And that he will not have any contact with

19   co-defendants, or potential witnesses in this case, unless it

20   is at the direction and under the supervision of counsel.

21          Counsel, anything further?

22          MR. HIMMEL:  No, sir.  Thank you, Your Honor.

23          THE COURT:  Anything further from the Government?

24          MS. MITTAL:  No, Your Honor.

25          THE COURT:  All right.  We are in recess.

24

1          MS. MITTAL:  Thank you, Your Honor.

2          THE CLERK:  All rise.

3      (Proceedings concluded at 3:40 p.m.)

4                    * * * * *

5              C E R T I F I C A T I O N

6  I, Josette Jones, court approved transcriber, certify that the

7  foregoing is a correct transcript from the official digital

8  audio recording of the proceedings in the above-entitled

9  matter.

10

11  ----------------------------          -------------------

12  JOSETTE JONES                          DATE

13  DIANA DOMAN TRANSCRIBING, LLC

14

15

16

17

18

19

20

21

22

23

24

25